UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ERIC TRIPP, | : | |
| | : | |
| Plaintiff, | : | Civil Action No.:  08-1861 (ESH) |
| | : | |
| v. | : | |
| | : | |
| MICHAEL ASTRUE, | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM OPINION**

Plaintiff, proceeding *pro se*, commenced this case under 42 U.S.C. § 405(g) against Michael Astrue, the Commissioner of Social Security, seeking review of the Social Security Administration's ("SSA") denial of his application for disability insurance benefits and supplemental security income.  Plaintiff applied for benefits after suffering an injury to his right hand "due to an accident at my former residence." (Compl. at 1.)  Defendant moved to dismiss the case or for judgment on the pleadings, asserting that this case was untimely because it was filed more than 60 days after the presumed and unrebutted date on which the plaintiff received notice of the SSA's final decision, which was five days after that decision was rendered.  *(*Mot. to Dismiss and Mem. in Supp. of the Comm'r's Mot. to Dismiss [Dkt. # 7].)  Applying the time computations set forth at Federal Rule of Civil Procedure 6(a) to exclude Saturdays, Sundays, and legal holidays from the five-day period, the Court found that "the complaint, on its face, [was] not conclusively time-barred" and denied defendant's motion to dismiss.  *See Tripp v. Astrue*, No. 08-cv-1861, 2009 WL 3784607 (D.D.C. Nov. 12, 2009).

Defendant now moves under Rule 54(b) of the Federal Rules of Civil Procedure for the

Court to revise the Order denying his motion to dismiss on the basis that it erroneously applied Rule 6(a). Defendant argues correctly that Rule 6(a) does not apply because "[t]he five-day grace period at issue in the present case is specified in a *regulation*, *i.e.*, 20 C.F.R. § 422.210(c)," *Banks v. Astrue*, No. 09-cv-22, 2009 WL 2046861, at *2 (W.D. Ky. June 13, 2009) (emphasis in original), not in the Federal Rules of Civil Procedure or "in any local rule or court order, or in any statute[.]" Fed. R. Civ. P. 6(a). The Court therefore will grant defendant's motion to revise the order to reflect that the complaint was not timely filed.

Also pending, however, is defendant's Motion for Judgment of Affirmance and Opposition to Plaintiff's Motion for Judgment of Reversal [Dkt. # 21]. Since the parties have briefed the merits of plaintiff's SSA claim and the untimely filed complaint does not deprive this Court of subject matter jurisdiction, *see Bowen v. City of New York*, 476 U.S. 467, 480 (1986), the Court, having considered the parties' submissions and the administrative record, will grant defendant's motion for judgment of affirmance and deny plaintiff's motion for judgment of reversal.

## BACKGROUND

The relevant facts are documented in the Administrative Record ("AR") [Dkt. ## 13-16]. Plaintiff was "presented to the emergency room" at Howard University Hospital on July 7, 2005, "with a right wrist laceration . . . after falling through a glass pane." (AR at 107.) He "was admitted and immediately taken to the operating room with the diagnosis of right wrist laceration with vascular and tendon injuries." (*Id.*) Plaintiff underwent surgery consisting of "an exploration of the right wrist, primary repair of ulnar artery and ligation of the radial artery," and on July 14, 2005, underwent additional surgery to "repair [] the right forearm flexor tendons, median and ulnar nerve repair. Operative findings were laceration of all the flexor tendons,

median and ulnar nerves." (*Id*. at 108.) Plaintiff was discharged from the hospital on July 16, 2005, with instructions, *inter alia*, to avoid heavy lifting and straining. (*Id*. at 146.)

In a medical examination report memorializing plaintiff's visit on July 20, 2005, Dr. A. Thomas indicated that plaintiff has functional limitations ranging from mild to extreme, that he could sit for six hours, stand for two hours, and walk for two hours. He also indicated that plaintiff was limited to lifting or carrying less than ten pounds, but stated that plaintiff "will not be able to use his hand in a functional capacity for 1 year[,]" until July 20, 2006. (AR at 149.) Plaintiff applied for disability insurance on July 28, 2005. (AR 55.) He received occupational therapy between October 4, 2005, and November 17, 2005, and pain medication. (AR 171-81.)

In a medical report following plaintiff's examination on January 17, 2006, Dr. Elliot Aleskow noted that plaintiff reported that "[h]e is unable to hold objects of any kind in his right hand[,] has no grip ability[,]" and takes Percocet for pain, "which he states is immense otherwise." (AR 150.) Dr. Aleskow found that plaintiff "had full range of motion of all extremities without limitation of range of motion whatsoever. [But he] kept his right hand in a clenched position [and] was only able to do mostly minimal activities with the right hand . . . [but] had full range of motion of the right elbow and right shoulder." (*Id*. 151.) Dr. Aleskow concluded that plaintiff "has significant limitation and use of the right hand [due to] hypothenar and thenar muscle wasting [and] decreased sensory in the hand[,] [specifically] in [his] ability to do fine motor skills with the hand." (*Id*. 152.) He found that plaintiff could "use his left hand without significant difficulty." (*Id*. 151.) The tasks plaintiff could not perform with his right hand were opening doors or drawers, dialing a telephone, and writing with a pen or pencil. (*Id*. 153.) He could pick up a coin from a flat surface with mild difficulty but had moderate to severe difficulty performing such tasks as fastening buttons, turning pages of a book, and opening jars.

(*Id.*)

In a medical report following plaintiff's examination on October 20, 2006, Dr. Murliya Kusumadharagowad noted that plaintiff's right hand was "fixed in flexed position" and that there were "slight movements of [his] [right] thumb." (AR 158.) Dr. Kusumadharago concluded that plaintiff could not use his right fingers, that his condition prevented him from working, and that it was permanent. (*Id.* 159.)

Following a hearing on June 8, 2007, at which plaintiff was represented by counsel and testified, the administrative law judge ("ALJ") found that plaintiff had not engaged in substantial gainful activity since July 7, 2005, that plaintiff "has the following severe impairment: traumatic transaction of the right flexor tendons at the wrist," but that plaintiff was not entitled to disability benefits because he did not have a qualifying impairment and he had the residual functional capacity to perform light and sedentary work. (AR 14-15.) The Appeals Council affirmed the ALJ's decision on August 6, 2008, and plaintiff initiated this action on October 29, 2008.

## ANALYSIS

### I. STANDARD OF REVIEW

#### A. Scope of Review

A district court is limited in its review of the SSA's findings to a determination whether those findings are based on substantial evidence. 42 U.S.C. § 405(g); *Butler v. Barnhart*, 353 F.3d 992, 999 (D.C. Cir. 2004); *Poulin v. Bowen*, 817 F.2d 865, 870 (D.C. Cir. 1987). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted), requiring "more than a scintilla, but . . . something less than a preponderance of the evidence." *Fla. Gas Transmission Co. v. FERC*, 604 F.3d 636, 645 (D.C. Cir. 2010) (citation

omitted).  A court must "carefully scrutinize the entire record" but may not reweigh the evidence or supplant the SSA's judgment of the weight of the evidence with its own, only reviewing whether the ALJ's findings are based on substantial evidence and whether the ALJ correctly applied the law.  *Butler*, 353 F.3d at 999; *Davis v. Shalala*, 862 F. Supp. 1, 4 (D.D.C. 1994); *Davis v. Heckler*, 566 F. Supp. 1193, 1195 (D.D.C. 1983).  Finally, substantial deference should be given to the ALJ's decision, but the evidence should be read in the light most favorable to the claimant.  *See Davis v. Shalala*, 862 F.Supp. at 4.

### B. Legal Framework for Determining Disability

In order to qualify for disability insurance benefits, an individual must prove that he has a disability that renders him unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" for a period of "not less than 12 months."  42 U.S.C. §§ 423(a)(1) & (d)(1)(A).  The claimant must support his claim of impairment with "[o]bjective medical evidence" that is "established by medically acceptable clinical or laboratory diagnostic techniques."  42 U.S.C. § 423(d)(5)(A).  In addition, the impairment must be severe enough to prevent the claimant from doing his previous work and work commensurate with his age, education, and work experience that exists in the national economy.  42 U.S.C. § 423(d)(2)(A).

The SSA uses a five-step evaluation process to determine whether a claimant is disabled, thus qualifying for benefits.  20 C.F.R. § 404.1520(a)(1).  A clear determination of disability or non-disability at any step is definitive, and the process ends at that step.  20 C.F.R. § 404.1520 (a)(4).  In  the first step, a claimant is disqualified if he is currently engaged in "substantial gainful activity."  20 C.F.R. § 404.1520(a)(4)(i).  In the second step, a claimant is disqualified if he does not have a "severe medically determinable physical or mental impairment" that is proven

"by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. §§ 404.1508 & 404.1520(a)(4)(ii). In the third step, a claimant qualifies for benefits if his impairment(s) meets or equals an impairment listed in 20 C.F.R. § 404, subpart P, appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). Between the third and fourth step, the SSA uses the entire record to make a determination of the claimant's residual functional capacity ("RFC"), which is "the most [the claimant] can still do despite [the] limitations" created by the impairment. 20 C.F.R. §§ 404.1520(a)(4) & 404.1545(a)(1). In the fourth step, a claimant is disqualified if his RFC shows that he is still able to do his past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). In the fifth step, a claimant is disqualified if his RFC shows that he is capable of adapting to "other work that exists in the national economy." 20 C.F.R. §§ 404.1520(a)(4)(v) & 404.1545(a)(5)(ii). If the claim survives these steps, then the claimant is determined disabled and qualifies for benefits. 20 C.F.R. § 404.1520(a)(4)(v).

## II. REVIEW OF THE ALJ'S DECISION

### A. The ALJ's Decision Was Based on An Adequate Record

"[A]n administrative law judge has the affirmative duty to investigate fully all matters at issue and to develop the comprehensive record requisite for a fair determination of disability." *Poulin v. Bowen*, 817 F.2d 865, 870 (D.C. Cir. 1987); *see also Krishnan v. Barnhart*, 328 F.3d 685, 695 (D.C. Cir. 2003); *Turner v. Astrue*, 710 F. Supp. 2d 95, 108 (D.D.C. 2010); *Gurrola v. Astrue*, 706 F. Supp. 2d 78, 85 (D.D.C. 2010). This duty is magnified when the claimant is not represented by an attorney, *Poulin*, 817 F.2d at 870, but such is not the case here. Nevertheless, the ALJ has an obligation to develop a "complete medical history" that contains medical records covering the relevant period of disability. 20 C.F.R. § 404.1512(d); *see also Poulin*, 817 F.2d at 870–72, 876 (remanding a claim in part because the ALJ failed to request records for a

nineteen-month gap during claimant's qualifying period). This duty compels the ALJ to contact the claimant's physicians to resolve any conflicts in the record if resolving the conflict is a necessary condition for deciding the claim. 20 C.F.R. § 404.1512(e); *see also Turner*, 710 F. Supp. 2d at 108 ("the ALJ need not undertake an additional investigation where there is no obvious gap or defect in the administrative record" or resolve conflicts whose resolution is immaterial to the ALJ's determination); *Gurrola*, 706 F. Supp. 2d at 86 (noting the duty does not exist "when . . . conflicts between the physician's opinions and other substantial evidence in the record convince the ALJ that those opinions should not be given controlling weight").

The ALJ had adequate medical records containing similar diagnoses about plaintiff's impaired right hand during the relevant time period. The ALJ "accorded great weight" to Dr. Aleskow's medical opinion, finding it "consistent with the evidence." The ALJ accorded "little weight" to Dr. Thomas' opinion, finding his assessment of plaintiff's "limitations for sitting, standing, or walking . . . not supported by objective medical evidence," and "the claimant's ability to use the left hand" not addressed. The ALJ also accorded "little weight" to Dr. Kusumadharagowad's opinion because it contained extraneous findings and "did not consider the claimant's ability to use his left hand." (AR 17.)

### B. The ALJ's Determination That Plaintiff Was Not Severely Disabled Is Supported by Substantial Evidence

The ALJ found that plaintiff did not meet a qualifying severe impairment because his "laceration of the right wrist is limited to one upper extremity; therefore, the severity of claimant's impairment does not meet or equal Listing 1.02."[1] (AR 15.) The medical evidence,

---

[1] This category of impairments is defined as follows:

1.02 Major dysfunction of a joint(s) (due to any cause): Characterized by gross

(continued...)

plaintiff's own statements in his claim forms that only his right hand was impaired (*see* AR 25),

and plaintiff's testimony at the administrative hearing, discussed next, all support the ALJ's finding.

### C. The ALJ's Determination on Plaintiff's Residual Functional Capacity Is Supported by Substantial Evidence

The ALJ found that while plaintiff's "medically determinable impairment could reasonably be expected to produce [pain and discomfort], the claimant's statements concerning the intensity, persistency and limiting effects of these symptoms are not entirely credible and credible only to the residual functional capacity determined [sic]." (*Id.*) While recognizing the limitations of plaintiff's "right wrist/hand," the ALJ found plaintiff's "allegations of total disability . . . not entirely credible because he is able to perform a wide range of activities using his left hand." (*Id.*) The ALJ considered plaintiff's testimony "that he is able to do everything with his left hand without any limitations or restrictions," that the "pain in his right hand . . . is not as severe as before" and that while he "cannot grip with or extend his fingers on his right hand . . . [h]e is . . . able to cradle things . . . in his right hand." (*Id.*)

The ALJ found from the evidence, including the testimony of plaintiff about his daily

---

[1](...continued)
anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With: A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b; or B. Involvement of one major peripheral joint in *each* upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c.

20 C.F.R. § 404, subpart P, appendix 1 (emphasis added).

activities and that of a vocational expert, that plaintiff's physical limitations prevented him from performing his past relevant work as telephone technician, technician, and supervisory technician because it involved medium or heavy, skilled labor.  (AR 18.)  Considering plaintiff's age of 45 years at the onset of his alleged disability, his high-school education, and his work experience in light of the Medical-Vocational Guidelines in Appendix 2 of the regulations, the vocational expert testified that plaintiff "would be able to perform the requirements of representative occupations such as sales attendant/greeter . . . lot attendant . . ., and router . . . ." (AR 19.)   "Based on the testimony of the vocational expert [and] considering the claimant's age, education, work experience, and [RFC]," the ALJ concluded that plaintiff was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy" and, thus, found plaintiff "not disabled." (*Id.*)

In a "Notice to the Court," which was docketed also as plaintiff's motion for judgment of reversal, plaintiff does not challenge the ALJ's decision whatsoever.  Rather, he asserts that despite his "full use of my left hand," his "means to earn a livable wage has diminished." (Notice to the Court [Dkt. # 19] at 1.)  He then argues "that a judgment awarding partial disability insurance should have been considered [since] I'm not asking for any hand outs."  (*Id.* at 2.)  But the SSA authorizes the payment of benefits only to individuals found to be totally disabled, *i.e.*, individuals with "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . ." 42 U.S.C. §§ 423(d)(1).  Thus, the Court has no legal basis to remand this action to the Commissioner to consider a claim for partial disability.[2]

---

[2] Plaintiff also suggests that he is being discriminated against in hiring decisions because of his disability, *see* Notice at 2, but an employment discrimination claim is beyond the scope of
(continued...)

## CONCLUSION

For the foregoing reasons, the Court concludes that the Commissioner's denial of plaintiff's application for SSA benefits is substantially supported by the administrative record. Therefore, defendant's motion for judgment of affirmance will be granted and plaintiff's motion for judgment of reversal will be denied. A separate Order accompanies this Memorandum Opinion.

                                                        /s/
                                      ELLEN SEGAL HUVELLE
                                      United States District Judge

DATE: May 24, 2012

---

[2](...continued)
this action.